[No. 13856. Department Two. — January 19, 1891.]

. 87  499
120  306
120  340

# THE CITY OF SAN LUIS OBISPO, Respondent, v. B. F. PETTIT, County Treasurer, etc., Appellant.

Taxes — Reassessment — Political Code. — Section 3649 of the Political Code, providing for the reassessment of property which has "escaped assessment" in the preceding year, is not unconstitutional.

Id. — Word "Assessment. — The word "assessment," as used in said section, means a valid assessment.

Assessment — Validity — Compliance with Statute — Money Paid into Court. — An assessment which is not made as prescribed by the statute is invalid. Therefore, if the statute requires money paid into court and deposited with the county treasurer to be assessed to such treasurer, and it is assessed to the plaintiff in the suit, the assessment is invalid.

Municipal Corporation Act — Time of Assessment — Adoption of System by City Council. — Section 871 of the municipal corporation act, which provides that the city council may adopt a system for the assessment, levy, and collection of taxes, which shall conform to the general laws of the state as nearly as circumstances will permit, "except as to the times for such assessment, levy, and collection," does not forbid the council from selecting the time fixed for the other taxes. It simply leaves the selection of the time to the discretion of the council.

Meaning of Words "Assessing and Collecting." — The words "assessing and collecting" may be so used as to include the operation called the levy of the tax.

Municipal Ordinance — Adoption of Sections of Code by Reference to their Number. — An ordinance passed in pursuance of section 871 of the municipal corporation act may adopt certain sections of the Political Code by reference to their number.

Ordinance — Invalidity of Part. — If part of an ordinance is invalid, but is distinctly separable from the remainder, such remainder may stand, and the invalid portion may be rejected.

Appeal from a judgment of the Superior Court of San Luis Obispo County, and from an order refusing a new trial.

The facts are stated in the opinion.

*Graves, Turner & Graves*, for Appellant.

*William Shipsey*, for Respondent.

Hayne, C. — This was an action to recover delinquent taxes. The property taxed was a sum of money depos-

ited with the defendant in his official capacity, under an order of the superior court, in a pending case. During the fiscal year 1887–88, the defendant reported the deposit to the assessor, who, however, did not assess it to him, but (probably acting under a mistaken view of the law) assessed it to the plaintiffs in the suit. The tax was not paid. In the following year the property was assessed to the defendant. But upon the theory that it had "escaped assessment" the preceding year, the amount of the assessment was doubled. The trial court gave judgment for the plaintiff, and the defendant appeals. The points made relate to the validity of the assessment.

1. In doubling the assessment, the assessor acted under a provision of the Political Code which is as follows:—

"Sec. 3649. Any property discovered by the assessor to have *escaped assessment* for the last preceding year, if such property is in the ownership or under the control of the same person who owned or controlled it for such preceding year, may be assessed at double its value."

The validity of this provision was affirmed in *Biddle* v. *Oaks*, 59 Cal. 95, in which case the court said that the legislature had power to impose a penalty for neglect to have an assessment made. In the case before us, there was no such neglect, because the defendant reported the property to the assessor. But we do not understand the decision as confining the operation or validity of the provision to cases where there has been neglect on the part of the person to whom the assessment is made. The terms of the provision indicate no such limitation. The language is general, and applies to all cases where property has escaped assessment in the preceding year, whatever may have been the cause of such escape.

Nor do we think that upon this construction the provision is invalid. Its evident purpose is to carry out

the general intention pervading the revenue system, that all private property shall bear its share of the burden of taxation. This is certainly a legitimate purpose, and the means employed to carry it out are not, in our opinion, in violation of any constitutional provision. The section does not provide that the property shall not be assessed in proportion to its value. It provides, in effect, that in certain cases assessments for two different years may be made in one, and therefore goes, in effect, merely to the time at which an assessment may be made. We see no constitutional objection to this. It is true that in exceptional cases it might happen that the property would increase or decrease in value since the preceding assessment, and hence that merely doubling the assessment would not be an accurate way of arriving at the value for the preceding year. But in the great majority of cases, doubling the assessment would be a fair enough way of arriving at a valuation for the preceding year.

And if in exceptional cases the method would result in an overvaluation, and it be assumed (for the purposes of the opinion) that in such cases the overvaluation would render the assessment void, it would have to be shown that the case was of such exceptional character. In this case no such question can arise, because the property assessed was money; and for all practical purposes was of the same value from year to year. The provision, therefore, is valid, and covers the case before us.

It is to be observed that the condition of the double assessment is not that the property should have escaped *taxation*. It is not enough, therefore, to show that the tax was not paid. The property must have escaped " assessment." But, in our opinion, the word " assessment," in this connection, means a *valid* assessment. A thing which has the semblance of an assessment, but which is void and of no effect, is for all practical purposes no assessment, and furnishes no reason why a proper assessment should not be made. The question therefore must

turn upon whether the assessment for the year 1887–88 was valid or invalid.

In our opinion it was invalid. The method of making an assessment in such a case as this is prescribed by the following provision of the Political Code:—

"Sec. 3647. Money and property in litigation in possession of a county treasurer, of a court, county clerk, or receiver, must be assessed to such treasurer clerk, or receiver, and the taxes be paid thereon under the direction of the court."

There was a plain violation of the provision of this section, and the well-established rule is, that if an assessment is not made as prescribed by the statute, it is void. (*Grotefend* v. *Ultz,* 53 Cal. 666; *Grimm* v. *O'Connell,* 54 Cal. 522; *Hearst* v. *Egglestone,* 55 Cal. 367; *Brady* v. *Dowden,* 59 Cal. 51; *Bosworth* v. *Webster,* 64 Cal. 1; *Daly* v. *Ah Goon,* 64 Cal. 512; *Klumpke* v. *Baker,* 68 Cal. 559.) It is true that the code provides that "no mistake in the name of the owner or supposed owner of real property shall render the assessment thereof invalid." (Pol. Code, sec. 3628.) But whatever may be the meaning of this provision, it does not apply to personal property. (*Lake County* v. *S. B. Q. M. Co.,* 66 Cal. 17.)

The assessment for 1887–88 was therefore invalid, and a reassessment in the following year was proper.

2. It is contended that there was no authority of law for making the levy.

Section 871 of the municipal corporation act provides that the city trustees "shall have power, and it shall be their duty, to provide by ordinance a system for the assessment, levy, and collection of all city or town taxes not inconsistent with the provisions of this chapter, which system shall conform, as nearly as the circumstances of the case may permit, to the provisions of the laws of this state in reference to the assessment, levy, and collection of state and county taxes, *except as to the times for such assessment, levy, and collection.*" (Laws 1883, p. 273.)

The ordinance passed in pursuance of the above provision contained, among other things, the following:—

"Sec. 3. The manner, form, and time of *assessing and collecting* city taxes shall be the same as is prescribed by the Political Code of the state of California for assessing and collecting state and county taxes; and all the provisions of title 9 of part 3 of said Political Code are hereby adopted, and are ordained to be, and are, the law for *assessing and collecting* city taxes, as to manner, mode, and time," etc.

The objection consists of two branches, which we shall consider separately.

(*a*) It is argued that the statute above quoted *forbids* the city from assessing, levying, and collecting its taxes at the same time as the state and county. But we do not so construe the provision. It simply leaves those matters to the discretion of the city trustees, who may fix any time they see fit. There is nothing to prevent them from selecting the time fixed for the other taxes.

(*b*) It is said that the ordinance in question provides only for "assessing and collecting" the taxes, and not for levying them, as to which it is contended that no provision is made.

But in the first place, we think that the words "assessing and collecting" are used in the ordinance in a general sense, and include the operation called levying the tax. The words are so used in the constitution. As is said in the clear and satisfactory argument of the counsel for the respondent: "The foundation of the city taxing power is in the constitution. Article 11, section 12, provides that 'the legislature . . . . may by general laws vest in the corporate authorities power to *assess* and *collect* taxes.' There is no authority to 'levy' unless one of the words 'assess and collect' includes levy."

In the second place, the ordinance does not confine itself to an adoption of the provisions of the code by a general reference to them as those in relation to the

assessment and collection of taxes. It goes on to designate specifically the provisions adopted, by saying: "And all the provisions of title 9, part 3, of said Political Code are hereby adopted." The part of the code so designated contains provisions for levying the tax (Pol. Code, secs. 3713–3719), and the ordinance makes provision for the difference in officers, etc.

3. It is contended that the provisions of the ordinance quoted conflict with section 879 of the municipal corporation act. The section referred to provides, in substance, that the delinquent taxes shall be collected by the city attorney by suit in the name of the city (Laws 1883, p. 277), while the portions of the Political Code adopted by the ordinance provide that such taxes shall be collected by the tax collector by sale of the property. (Pol. Code, secs. 3765 et seq.) But if it be conceded that these portions of the ordinance are in conflict with the statute (as to which see *City of Placerville* v. *Wilcox*, 35 Cal. 21), it does not follow that the whole ordinance is void. "Nothing is better settled than that if the part of a law or ordinance which is invalid is distinctly separable from the remainder, the latter can stand and the former be rejected." (*Ex parte Christensen*, 85 Cal. 212.) The provision for the collection of the delinquent taxes seems distinctly separable from the other parts of the ordinance, and may therefore be rejected. The proceedings in this case were in accordance with the statute, the suit having been brought under section 879, above referred to.

In the view we have taken, it is not necessary to consider the effect of the amended ordinance.

We therefore advise that the judgment and order appealed from be affirmed.

BELCHER, C., and FOOTE, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order appealed from are affirmed.

DE HAVEN, J., concurring. — I concur in the judgment and in the foregoing opinion. The money which was the subject of the double assessment ·for the year 1888–89 did not bear its share of taxation for the preceding year. If the owner had waived the invalidity of its assessment for the fiscal year 1887–88, and had paid upon such assessment the tax levied for that year, a different question would have been presented.