(82 N. W. Rep. 732.)

---

MINNEAPOLIS AND NORTHERN ELEVATOR COMPANY *vs.* TRAILL

COUNTY.

Opinion filed May 8, 1900.

**Taxation—Grain in Elevators—Constitutional Law.**

> Chapter 5 of the Laws of 1899, which relates to the assessment and taxation of grain in elevators, warehouses, and grain houses. does not violate section 176 of the state constitution, which requires that "laws shall be passed taxing by uniform rule all property according to its true value in money." Neither is such act obnoxious to sub-division 23 of section 69 of the constitution, which prohibits the legislature from passing local or special laws for the assessment or collection of taxes; nor to section 11 of the constitution, which requires that all laws of a general nature shall have a uniform operation,—and is a valid enactment.

Appeal from District Court, Traill County; *Pollock,* J.

Action by the Minneapolis & Northern Elevator Company against the County of Traill. Judgment for defendant, and plaintiff appeals. Affirmed.

*Cochrane & Corliss,* for appellant.

Chapter 5, Laws 1899, shifts the burden of collecting the taxes on grain in elevators from the party legally chargeable with the payment thereof to private citizens and corporations. The power to use the private citizen as a tax collector never extends so far as to warrant the legislature in placing him in a position where there is possibility of injury to him on account thereof. Cooley on Taxn. (2d Ed.) 432; *South Nashville Ry Co.* v. *Morrow,* 11 S. W. Rep. 348-356. The only cases where the citizen may be used as a tax collector are divisible into three classes: *First.* Where the tax is levied specifically upon a stock dividend or upon the interest on a corporate bond, and the corporation is required to withhold the amount of the tax from such dividend or such interest and pay it directly into the public treasury. In such cases the corporation cannot be injured because it is not required to advance its own

money and look to the future for reimbursement. Belonging to this class are *Height* v. *Ry. Co.*, 6 Wall. 15; *Com.* v. *Ry. Co.*, 104 Pa. St. 89-106. *Second.* Where the stock or bond itself is assessed against the owner and the corporation is required to retain out of any dividend or interest payable in the future the amount of such tax. In these cases the corporation is not required in the first instance to advance the money and look for future reimbursement, but becomes responsible for the tax only when there comes into its hands in the form of dividends or interest moneys belonging to the stockholder or bondholder. Belonging to this class are *Minot* v. *Ry. Co.*, 18 Wall. 206; *State* v. *City of Newark*, 39 N. J. L. 380; *Farmers' etc. Bank* v. *Hoffman*, 61 N. W. Rep. 418; *Hershire* v. *Bank*, 35 Ia. 272; *Maltby* v. *Ry Co.*, 52 Pa. St. 140; *Delaware etc. Co.* v. *Com.*, 66 Pa. St. 64-69. *Third.* Where the stock is assessed against the owner, the corporation is required to advance the tax and look to the stockholder for reimbursement. Here no risk of financial loss is imposed upon a third person. The owner of stock is not merely entitled to dividends, but he is the owner of a proportionate share of the property of the corporation. (*St. Albans.* v. *Nat. Car Co.*, 57 Vt. 68-81). Belonging to this class are *First Nat. Bank* v. *Kentucky*, 9 Wall. 353; *Cummings* v. *Bank*, 101 U. S. 153; *St. Albans* v. *Nat. Car Co.*, 57 Vt. 68; *City* v. *Lange*, 62 N. W. Rep. 158. The lien given by this statute "for the amount of the tax charged under such assessment" imposes upon the elevator company the necessity of determining in advance just what the tax will be and gives it no security for any costs, and no protection against replevin or conversion suits at the direction of the owner of the grain should it claim a lien for too much. "The burden imposed upon the elevator companies is too onerous and threatens great injustice." *South Nashville Ry. Co.* v. *Morrow*, 11 S. W. Rep. 348-356; *City of New Orleans* v. *Houston*, 119 U. S. 265, 7 Sup. Ct. Rep. 198. This law violates subdivision 23 of section 29, Constitution, which prohibits special laws for the assessment and collection of taxes. Also § 11, Constitution, which requires all laws of a general nature to have uniform operation. The legislature may classify and legislate differently for different classes, but classification must have a direct relation to the character of the legislation. *Edmonds* v. *Herbrandson*, 2 N. D. 270; *Vermont L. & T. Co.* v. *Whithed*, 2 N. D. 282; *Plummer* v. *Borsheim*, 80 N. W. Rep. 690. The selection of a particular class of personal property, viz: grain, and putting it in a class by itself, the excluding from that class all grain not in an elevator or warehouse, and providing an exceptional and harsh method of collecting this tax, is a purely arbitrary classification and void. *State* v. *Hummer*, 42 N. J. L. 439; *Edmunds* v. *Herbrandson*, 2 N. D. 270.

*John F. Selby*, for respondent.

Unless restrained by constitutional provisions the power of the

state and legislature as to the mode, form, and extent of taxation is unlimited where the subjects to which it relates are within its jurisdiction. *State Tax on Foreign Held Bonds,* 15 Wall. 319; *Eurich* v. *Peo.,* 79 Ill. 214; *South Nashville Ry. Co.* v. *Morrow,* 11 S. W. Rep. 354; 3 Pickle (Tenn.) 406. The constitution of this state does not require that property shall be assessed in the name of the owner, but that all property shall be taxed according to its value by a uniform rule, and that it shall be assessed in the county in which it is situated. § § 176, 179, 181, Const. Legislative power exists to assess to banks the deposits of individuals. *State* v. *Carson City Sav. Bk.,* 30 Pac. Rep. 703; *Burke* v. *Bedlam,* 57 Cal. 602. It is competent to tax property in an agent's hands, to and in the name of the agent, for the purpose of subjecting all taxable property in the state to taxation. *Dalby* v. *Peo.* 16 N. E. Rep. 224; *Walton* v. *Westwood,* 73 Ill. 125; *Curtis* v. *Township,* 23 N. W. Rep. 175; *Spanish River L. Co.* v. *Bay City,* 71 N. W. Rep. 595; *Sears* v. *Cottrell,* 5 Mich. 251; *Hutchinson* v. *Board,* 23 N. W. Rep. 249; *City* v. *Lumber Co.,* 43 N. W. Rep. 653; *Ex parte Riddle,* 8 Heisk. 817; *Carrier* v. *Gordon,* 21 Ohio St. 605. The statute is not obnoxious to the constitutional provision against special legislation. It provides for the assessment of all grain "in any elevator, warehouse or grain house in this state on the first day of April." The term grain house and granary are synonymous and means a repository for grain after it is threshed. The law is uniform in its operation. *Tappan* v. *Bank,* 19 Wall. 505.

YOUNG, J. The only question involved in this case is the constitutionality of chapter 5 of the Laws of 1899, which relates to the assessment and taxation of grain in elevators, warehouses, and grain houses. The plaintiff, in its complaint, in substance alleges that it is a Minnesota corporation, and is duly authorized to do business in this state, and as a public warehouse man; that both prior and subsequent to April 1, 1899, it owned and operated a grain elevator in the Township of Belmont, in Traill county; that on the 1st day of April, 1899, it had in its elevator in Belmont township 20,685 bushels of wheat; that such wheat was sold by plaintiff on March 7, 1899, to one G. A. Thomson, a resident of Montreal, Canada; that the said Thomson had been the owner of said wheat at all times since said purchase, and holds a warehouse receipt therefor, issued to him by plaintiff; that the plaintiff, at the time the assessment for 1899 was made, delivered to the assessor of the taxing district of Belmont a sworn statement, showing that the said G. A. Thomson, and not the plaintiff, was the owner of all of said grain; that the assessor of said district nevertheless listed and assessed all of said grain to and against the plaintiff, and so entered the same on the assessment roll of Belmont township, and the same was thereafter returned to the county auditor, and entered upon his tax list as the property of the plaintiff, and not the property of G. A. Thompson. It is also alleged that the plaintiff contested the assessment both before the township board of review and the

county board of equalization, and presented suitable proof to show that Thomson, and not plaintiff, was the owner of the grain assessed to it. The plaintiff broadly challenges the legal right of the state to assess it for this grain. It is conceded that the assessment was entirely regular in form, and that it was made in the manner required by chapter 5 of the Laws of 1899, and that the validity of such assessment turns wholly upon the constitutionality of that enactment. No question of procedure is raised by either party. A demurrer was interposed to the complaint upon the ground that it does not state facts sufficient to constitute a cause of action. This was sustained by the District Court, and plaintiff appeals from the order sustaining it.

The portions of the law under which the assessment was made to which we shall have occasion to refer read as follows: Section 1. "All grain in any elevator, warehouse or grain house in this state on the first day of April in each year shall be assessed and taxed in the name of the person, firm, company or corporation owning or operating such elevator, warehouse, or grain house on said date." Section 2. "All agents or other persons in charge of any such elevator, warehouse or grain house shall furnish the assessor under oath a statement of all grain in any such elevator, warehouse or grain house on the first day of April in each year, such statement to include the number of bushels of each and all kinds of grain on said date in any elevator, warehouse, or grain house of which he is agent, or has under his care or control, and shall further show in said statement the owner, or owners of such elevator, warehouse or grain house, or if said elevator, warehouse or grain house is not operated by the owner then the person, firm, company or corporation operating the same." Section 3. "That if the grain so assessed is not owned by the person, firm, company or corporation against whom it is assessed and taxed under the provisions of this act then such person, firm, company or corporation shall have a lien upon such grain for the amount of the tax charged under such assessment and taxation, and can hold such an amount of the grain assessed and taxed under the provisions of this act as may be necessary to pay the tax charged against such person, firm, company or corporation on the grain so assessed and taxed." It is entirely clear that the assessment required to be made by section 1, above quoted, is against the person, firm, company or corporation having the actual physical possession and control of the grain assessed, and without any reference to ownership other than that furnished by possession. The tax is assessed against the possessor, and against no one else. It is well settled that the power of the state as to the mode, form, and extent of taxation is unlimited when the subjects to which it applies are within the jurisdiction, unless restricted by constitutional provisions. *State Tax on Foreign Held Bonds Case,* 15 Wall. 319, 21 L. Ed. 179; Cooley, Tax'n, p. 22. The grain which the act under consideration attempts to reach is situate within the state, and is accordingly a proper subject for

taxation. The right of the legislature to impose a tax upon property so situated is unquestionable, and it may also be added that its duty to do is equally plain, for the very constitutional provision upon which the plaintiff relies provides, among other things, that all property shall be taxed. It was, then, the duty of the legislature to provide a mode for subjecting this class of property to the payment of its just share of taxation, and the determination of the methods to be employed—as to their effectiveness or expediency —is entirely a matter of legislative discretion, so long as no constitutional provision is violated. It is plaintiff's contention that the law here in question imposes taxes by a rule which is not uniform, and is, therefore, in violation of section 176 of our constitution, which provides that "laws shall be passed taxing by uniform rule all property according to its true value in money," etc. It is claimed that this law imposes a greater burden of taxation upon the owners or operators of elevators, warehouses, and grain houses than upon other persons, by compelling them to pay the taxes of others in addition to their own. It is asked, can A. be compelled to pay the tax of B.? Or, in the case at bar, can plaintiff be compelled to pay Thomson's tax? These questions which represent the substance of plaintiff's attack upon the law in question, are somewhat misleading by reason of a slight departure from the facts. There is in the supposed case an assumption that a tax is actually assessed against B., and in the present case that there is a tax assessed upon the grain in question to G. A. Thomson, which is not true. The only assessment of this grain is that made to plaintiff, and the only tax imposed is that which plaintiff is required to pay. Hence the plaintiff is not required to pay Thomson's tax, for he has none, but is asked merely to pay its own tax, assessed upon property found in its possession and control on April 1st; and the real and only question then is, has the legislature the power to adopt this mode of assessment, and assess property to the party in possession? Both under the authorities and upon principle an affirmative answer must be given to this question. Section 179 of our state constitution merely provides that all property subject to taxation shall be assessed "in the manner prescribed by law." There is no constitutional provision which makes it imperative that it be assessed against the owner. Indeed, the necessity for speedy and certain methods of producing revenue for governmental support is so great that the legislatures of many states have declined to enter into an investigation of titles for the purpose of taxation, particularly in reference to property of a shifting nature, and have, accordingly, provided for assessments against the party having the possession and control upon some specified date. Such enactments have been repeatedly before the courts, and have been uniformly upheld. Indeed, we are cited to no case which has denied the right of a state to enforce this method of assessment. A few instances are cited by way of illustration.

Section 11, chapter 15, Rev. St. Wis. 1849, provided that all kind of property of a nonresident used for manufacturing or other

business in the state might be assessed and taxed to the person having it in his possession. Such an assessment came in question in *Palmer* v. *Corwith,* 3 Pin. 267, and was upheld. In *City of Merrill* v. *Lumber Co.,* 75 Wis. 142, 43 N. W. Rep. 653, the defendant was assessed and taxed for logs owned by a nonresident, but in defendant's charge and control as agent. This was under a later law. In that case the tax was also upheld and enforced, the court, in the course of its opinion, using this language: "The property is assessed to the person in possession, whether he be the owner or holds it as agent or in some other representative capacity mentioned. If the defendant had in charge, or was in possession of, the logs as occupant or agent, they were lawfully assessed to it, the same as though it were the absolute owner."

In *Walton* v. *Westwood,* 73 Ill. 125, a tax was assessed to the plaintiff upon certain grain in his possession and under his control, but not owned by him, under Rev. St. 1874, authorizing such assessment. His right to restrain the collection of the tax so levied upon the ground that it was "unauthorized by law, wholly illegal, and absolutely void, and a fraud upon his rights," was denied; the court saying: "The grain had been raised in this state, purchased and paid for, and was in a warehouse in this state, held and controlled by a taxpayer of this state, on the 1st day of May, and listed by him as taxable on that day. It was not property in *transitu,*—it was not a consignment,—but was property appellant held and controlled as agent; and why should he not pay the taxes assessed against it, and where is the hardship of it, in view of section 256, which gave him a lien on the property, and which could not have been taken out of his possession by the several owners of it, until he was indemnified against the payment of the taxes? It is his own fault and negligence that he is damnified when it was in his power to have prevented it by asserting his lien." Later the same court, referring to the same statute, in *Lockwood* v. *Johnson,* 106 Ill. 336, said: "It was clearly the purpose of the statute to make the agent liable for the tax, else no lien would have been given the agent for his protection.

Section 817 of the Iowa Code of 1873 provides that "any person acting as the agent of another, and having in his possession or under his control or management, any money, notes, credits or personal property, belonging to such other person, with a view to investing or loaning it, or in any manner using the same for pecuniary profit, shall be required to list the same at the real value, and such agent shall be personally liable for the tax on the same." Rothrock, J., speaking for the court in *Hutchinson* v. *Board,* 66 Ia. 35, 23 N. W. Rep. 249, in support of a tax levied under the section quoted, and in answer to an objection that the statute in question was in conflict with article 1, § 18, of the Iowa constitution, which provides that private property shall not be taken for public use without just compensation, said: "We deem it sufficient to say, inasmuch as the property in question is protected by the laws of the state to the same extent as the property of any other

citizen, and as the rate of taxation is the same as that levied on all the citizens resident of the same taxing district, that the plaintiff's property is not appropriated to public use without compensation. It seems to us eminently just that the plaintiff, and those for whom he is acting, shall share the burdens incurred in enforcing the laws under and by virtue of which property is protected. See also, *Hutchinson* v. *Board,* 67 Ia. 182, 25 N. W. Rep. 121.

Cooley, in his work on Taxation (at page 373 [2d Ed.]), says: "Statutes sometimes provide that tangible personal property shall be assessed wherever in the state it may be, either to the owner himself or to the agent or person having it in charge; and there is no doubt of the right to do this whether the owner is resident of the state or not."

The case of *Com.* v. *Gaines,* 80 Ky. 489, has many features similar to the case at bar, and is strongly in point. Gaines had 9,297 barrels of whisky in his warehouse, owned by various persons, to whom warehouse receipts had been delivered. · The whisky was taxed to Gaines, under section 7, article 1, chapter 92, Gen. St. Ky., providing that "all estate, real and personal, and all interest in such estate, named and specified in the tax book aforesaid, shall be assessed for taxation and the tax paid by the owner or possessor thereof to the person authorized by law to receive the same." The legality of the assessment to Gaines was directly in issue. On this point, the court said: "The relative rights and equities which may exist between the owner and possessor of the whisky cannot affect the power of the state to authorize its assessment to either of them, as the legislature may deem most prudent and apt to result in securing taxes therefrom. Indeed, convenience and necessity unite in support of the well-established doctrine that the taxing power may impose taxes upon persons or property, and may adopt remedies for their collection which operate against the person of the owner, or possessor, or the thing taxed, or all of them combined. And, if this were not the case, it would be easy for nonresident owners, from the proximity of the states and the commercial rights in each, through the quick transportation of this age, to escape the payment of taxation on this movable property produced by our own soil, while it received the protection of our own laws. This would be unjust; and the legislature, in declaring that the owner or possessor shall list and pay taxes on property belonging to the one, or in the hands or keeping of the other, intended to prevent it. * * * We are therefore of opinion that possessionary control of property is sufficient to authorize its assessment to the possessor or keeper of it. But this rule should not be misapplied to an absurd assessment of property which may be loaned to a neighbor for a day, or that necessarily passes through different hands in its temporary use, and which may be easily and properly assessed to the owner, who, in the absence of contract stipulating otherwise, is equitably and legally bound to pay the taxes as between himself and the possessor not coupled with an interest." Other adjudications assert the same principle.

In *People* v. *Lardner,* 30 Cal. 243, it was held that money belonging to litigants, in the hands of the county treasurer, was properly assessed to the treasurer by name. And in *City of San Luis Obispo* v. *Pettit,* 87 Cal. 499, 25 Pac. Rep. 694, an assessment to one of the litigants was held invalid. See, also, *Dalby* v. *People* (Ill. Sup.) 16 N. E. Rep. 224. So, too, moneys deposited in savings banks may be assessed to the banks. *People* v. *Badlam,* 57 Cal. 602.

The case of *Spanish River Lumber Co.* v. *City of Bay City* (Mich.) 71 N. W. Rep. 595, is also in point. Acts 1893, No. 206, § 14, subd. 8, provided for the assessment of personal property, including forest products, to the person having control of the premises, dock, etc. The Michigan Supreme Court in that case used this language: "If the defendant had charge or was in possession of the logs as occupant or agent, they were lawfully assessed to it, the same as though they were the real owner. No distinction need be made in the mode of assessment whether the person is such owner or only has charge of the property as agent for the owner. It is not essential that he should be the general agent to sell the property, or that he have authority to act for the owner in all matters. The statute makes possession, or the care, custody, or management of the property by another sufficient to sustain the tax, as well as the fact of ownership. This is very clear from the language used, which is definite and plain." An analogous principle is found in the internal revenue act of 1864, which made railroad companies liable to pay a tax of 5 per cent. upon dividends declared by them and upon interest installments due upon their bonds. The enforcement of a tax imposed under this act was unsuccessfully resisted in *Barnes* v. *Railroad Cos.,* 17 Wall. 294, 21 L. Ed. 544. In the course of its opinion, the court said: "Attempt is made to invoke that provision [referring to a particular section of the act] as showing that the tax is a tax on the shareholder, and not a tax on the railroad company; but the court is unable to perceive that the argument has any foundation whatever, as the provision does not contain a word inconsistent with the preceding part of the section, which in terms imposes the tax upon the railroad company. Beyond doubt, these two provisions should be construed together, and, when so construed, they are perfectly consistent, and show to the entire satisfaction of the court that the plaintiffs are liable to pay the tax in controversy. They are so liable because it appears that they, as such company, having been indebted for money, issued bonds or other evidences of indebtedness, payable, with interest, or with coupons representing interest, in one or more years after date, and that they declared a dividend in money due or payable to their stockholders as part of the earnings, profits, income, or gains of such company; and the section provides that such company, under such circumstances, shall be subject to and pay a tax of five per centum on the amount of all such interest or coupons, dividends or profits, and authorizes the company to deduct and withhold the amount of the tax from the dividend due or payment to their

stockholders. * * * Payment of the tax by the company is an absolute requirement, just as much as if the company was the actual holder of the bonds and the real owner of the dividends, whether they deduct and withhold the amount from the dividends or not, and the fact that the company is permitted to do so if they see fit does not in the slightest degree change the relation of the company to the United States as the taxpayers under that section of the law imposing internal revenue duties."

A statute of Kentucky providing for the taxation of shares of bank stock to the bank directly was also before the United Staes Supreme Court in *First Nat. Bank of Louisville* v. *Commonwealth of Kentucky*, 9 Wall. 353, 19 L. Ed. 701. It was contended that the shares belonged to the individual shareholders, and that the bank could not be made responsible for a tax levied on the shares, and be compelled to pay such tax to the state. Mr. Justice Miller, in pronouncing the opinion of the court sustaining the tax, used this language: "If the State of Kentucky had a claim against a stockholder of the bank, who was a nonresident of the state, it could, undoubtedly, collect the claim by legal proceedings, in which the bank could be attached or garnished, and made to pay the debt out of the means of its shareholder under its control. This is, in effect, what the law of Kentucky does in regard to the tax of the state on the bank shares. * * * The mode under consideration is the one which congress has itself adopted in collecting its tax on dividends, and on the income arising from bonds of corporations. It is the only mode which certainly and without loss secures the payment of the tax on all the shares, resident or nonresident; and, as we have already stated, is the mode which experience has justified in the New England states as the most convenient and proper in regard to the numerous wealthy corporations of those states. It is not to be readily inferred, therefore, that congress intended to prohibit this mode of collecting a tax which they expressly permitted the states to levy. See, also, *Haight* v. *Railroad Co.,* 6 Wall. 15, 18 L. Ed. 818. Also, *Railroad Co.* v. *Morrow* (Tenn. Sup.) 11 S. W. Rep. 348, 2 L. R. A. 853, and cases cited on page 353.

Since 1801 there has been a statute in force in the State of New York requiring the tax collector, in default of payment of a tax, to levy upon and sell any goods and chattels in the possession of the tax debtor. This provision has been repeatedly before the courts of that state. Its validity was expressly assumed in *Holt* v. *Johnson,* 14 Johns. 425; *Spencer* v. *McGowen,* 13 Wend. 256; *Gilbert* v. *Moody,* 17 Wend. 354; and impliedly in *Sheldon* v. *Van Buskirk,* 2 N. Y. 473, and *Railroad Co.* v. *Roach,* 80 N. Y. 339; and in *Hersee* v. *Porter,* 100 N. Y. 403, 3 N. E. Rep. 338, its constitutionality was expressly affirmed. We quote from the language by Andrews, J., in the case last cited: "It is claimed that legislative authority to seize and sell the property of A. to pay the tax of B. is not due process of law, and also that it violates the constitutional injunction that private property shall not be taken for public use

without just compensation. Const. art. 1, § 6. Confining the proposition to this bare statement, its correctness may be admitted. But the statute in question adds the additional prerequisite or condition that, to authorize the property of A. to be taken for a tax against B., the property must be in the possession of B. at the time of the taking; or, rather, the statute does not inquire whether the legal title is in A. or B., but it conclusively adjudges it to be in the person taxed for the purpose of the seizure and sale, provided it is in his possession. For the purpose of collecting the tax, the actual ownership, in contemplation of the statute, follows the actual possession. The possession under the statute is not merely a badge of ownership; it is title, so as to subject the property to seizure and sale for a tax against the possessor. * * * In view of the long-continued acquiescence by the executive, legislative, and judicial departments of the government in the legislation now in question, the court would not, we think, be justified in departing from the common understanding that the statute authority to seize any property in the possession of a person for the payment of the tax justifies the seizure and sale of the property of a third person so situated. Each individual in the community has notice of the law, and is presumed to understand that if his chattels are, by his consent or permission, in the possession of another, they can be taken for a tax against the person in possession. The law was probably framed to prevent fraud and collusion and disputes as to title, and each individual in the community may be assumed to have consented that his property shall be subject to the right of the state in this way to enforce the power of taxation. The state only receives the sum to which it is entitled. As between the owner of the property seized and the person taxed, the latter ought to have paid the tax; and we see no reason to doubt that, if the payment is enforced out of another's property in his possession, the true owner has a remedy against the person who ought to have paid it. * * * The proceeding in the case before us was an execution of a power of government in respect to taxation, and, although the right to take the plaintiff's property for the tax was not adjudged in a judicial proceeding, the act of the legislature, and the acts of the administrative officers thereunder, are, we think, due process of law within the meaning of the constitution." Substantially the same statute as that of New York was in force in Michigan from 1833 to 1858. Its constitutionality was affirmed in *Sears* v. *Cottrell*, 5 Mich. 250, but by a divided court, one judge dissenting. On the right of the state to act upon possession as conclusive evidence of title for the purposes of taxation, Christiancy, J., concurring with the majority, said: "The public exigencies demand regular and prompt payment of taxes, and cannot brook the delays and risks of private litigation between individual claimants of the property. In the collection of taxes, therefore, this law adopts the presumption of property arising from possession,—the most obvious index of title,—and, as between the government and the possessor or other claimant, makes that presumption conclu-

sive; giving, however, to the owner or other person interested, should he turn out to be other than the possessor, his action over against the person in whose possession it was found, and for whose tax it was taken, and leaving the parties to settle the question of title and their respective rights between themselves."

The statute referred to in the two cases last cited is much more harsh than the statute we have under consideration, for it expressly authorized the taking of the property of an entire stranger to the tax, and literally required the payment of the tax of another. The tax which the plaintiff in the case at bar is required to pay is not the tax of another, but its own tax, levied upon property in its possession and under its control. That it would be so assessed and taxed it is conclusively presumed to have known, and by accepting and holding possession of the grain in its elevator on April 1st it voluntarily subjected itself to the operation of the statute which provides for the assessment of which it now complains. We are convinced that the legislature had the right to act upon the evidence of ownership afforded by possession, and for the purposes of taxation to make the presumption arising therefrom conclusive, and to provide, therefore, for the assessment and taxation of grain to the party in posession in the manner and form as provided by the act in question. This conclusion is, we think, fully established by the authorities cited. Neither, in our opinion, does the act in question violate subdivision 23, § 69 of the state constitution, which prohibits the legislature from passing local or special laws for the assessment or collection of taxes. Nor does it contravene section 11 of the constitution, which requires all laws of a general nature to have a uniform operation. The act in question clearly applies to all kinds of grain, and wherever situated within the state, whether in an elevator, a warehouse, or a grain house; and the obligation to pay taxes upon grain so situated is imposed without distinction upon all persons operating such elevators, warehouses, and grain houses, whether they be persons, firms, companies, or corporations. It is a matter of common knowledge that the various kinds of grain for the assessment and taxation of which this act provides constitute a considerable portion of the taxable property of the state; also, that grain is a kind of property altogether peculiar, in that, as a class of property, it carries with it no identification marks by which its ownership can be determined. Then, too, it is a kind of property not only impossible of identification aside from evidence of possession, but is also a kind that easily eludes the assessor, and speedily passes out of the reach of the tax collector, by consumption, or by being transported to markets outside of the state. These conditions confronting the legislature were, we think, sufficient to warrant it in providing an exclusive method for its assessment and taxation, and thereby subject it to its just share of public taxation. As to the foundation of the right of the legislature to classify, see *Trust Co.* v. *Whithed,* 2 N. D. 82, 49 N. W. Rep. 318; *Edmonds* v. *Herbrandson,* 2 N. D. 270, 50 N. W. Rep. 970, 14 L. R. A. 725; *Plummer* v. *Borsheim,* 8 N. D. 565, 80 N. W. Rep. 690.

Appellant urges that the lien provided by section 3 does not afford an adequate indemnity to those who are compelled to pay taxes upon grain which they in fact. do not own. This we need not discuss, for, in the view we have taken, it is not a feature in the determination of the right of the state to impose the tax against the party in possession and control of the grain. Having reached the conclusion that it is within the taxing power of the state to assess and tax grain to a party in possession, the question as to whether a sufficient or any provision has been made to indemnify the taxpayer against possible loss does not affect the validity of the assessment or tax. For obvious reasons, the state cannot undertake to relieve taxpayers from the hardships which, in the nature of things, are necessarily incident to the exercise of the taxing power, and are bound to follow under any system which human ingenuity has as yet been able to devise. In New York and Michigan it appears that the party whose property has been sacrificed to pay the tax of another has only the common-law remedy against the person for whose tax it was seized. That remedy is supplemented in this state by the lien given by section 3. Whether the lien is sufficiently broad to cover all contingent losses does not touch the right of the state to impose the tax. Our conclusion is that the act in question violates no constitutional provision, and that it is a valid enactment. The order of the District Court sustaining the demurrer is accordingly affirmed. All concur.