No. 13492

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

LARRY D. STENSVAD and MARGARET STENSVAD,
M-V ENTERPRISES, INC., a Montana
corporation, and FAUNCO, INC., a Montana
corporation,

               Plaintiffs and Appellants,

    -vs-

MUSSELSHELL COUNTY, GENO MINNIE, O.S.
ELLIS and R. JORGENSON, County
Commissioners, ROBERT L. HAGSTROM,
County Assessor, and MARGARET A.
REIGHARD, County Treasurer,

               Defendants and Respondents.

---

Appeal from:  District Court of the Fourteenth Judicial District,
               Honorable Nat Allen, Judge presiding.

Counsel of Record:

    For Appellants:

        Moses, Tolliver and Wright, Billings, Montana
        Towe, Ball, Enright and Mackey, Billings, Montana
        Thomas Towe argued, Billings, Montana

    For Respondents:

        John L. Pratt, County Attorney, argued, Roundup, Montana

---

                      Submitted:  November 27, 1978
                      Decided: MAR - 1 1979

Filed: MAR - 1 1979

_Thomas J. Kearney_
                   Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Plaintiffs appeal from a judgment of the District Court, Musselshell County, denying their prayer for an order permanently enjoining defendants from issuing a tax deed to certain real property for failure to pay a portion of a 1971 assessment representing taxes on cattle under the control and in the possession of M-V Enterprises. The court entered its amended findings of fact, conclusions of law, judgment and order on June 30, 1976, directing defendants to proceed forthwith to take tax deed to the real property, now owned by plaintiff Faunco, Inc. Plaintiffs contend that certain of the court's findings of fact and conclusions of law are erroneous and unsupported by the evidence, and that, therefore, the judgment should be reversed.

In 1971, Larry D. Stensvad was a stockholder in and/or manager of certain corporations involved in various aspects of the livestock industry. One of those corporations, M-V Enterprises, among whose principle shareholders was Stensvad, owned real property in Musselshell County upon which the corporation operated a feedlot. Pursuant to an agreement between M-V Enterprises and the L. D. Stensvad Cattle Company, cattle belonging to other individuals were left in the possession and control of M-V Enterprises to be fed and cared for in preparation for marketing. These cattle had been purchased by a separate Stensvad corporation, the L. D. Stensvad Cattle Company, whose only shareholders were Stensvad and his wife, Margaret. The arrangement was such that L. D. Stensvad Cattle Company would buy cattle for individual out-of-state investors who had contracted with the company to make the purchases for them. The cattle so

purchased were delivered to the feedlots of M-V Enterprises for care and feeding; the L. D. Stensvad Cattle Company billed the individual investors for their respective shares of the expenses incurred. Each of the cattle involved in this arrangement carried on its right hip a pitchfork or "turkey track" brand owned by and registered to the L. D. Stensvad Cattle Company; on its right shoulder, each bore an unregistered brand, a number, designating its individual owner.

In May, 1971, the Musselshell County assessor, in the process of compiling data for the upcoming tax assessment, supplied M-V Enterprises with a form which, when completed, is a record of the number of cattle which have been fed during each month of the preceding year. The form is provided in compliance with section 84-409, R.C.M. 1947, in effect at the time of the events, which requires the county assessor to obtain from each person a written statement, made under oath, which sets forth all the taxable property owned by that person or in his possession or under his control as of a specific time. Each such form contains an affidavit which declares that the list is a full and correct statement of the property subject to taxation which is owned, claimed, possessed or controlled by the individual or business entity. See section 84-410, R.C.M. 1947. M-V Enterprises returned to the county assessor the completed form, which had been signed by Dona McCleary, a secretary employed by the corporation. The form showed nothing as to the ownership of the cattle.

The assessor, following statutory mandate, section 84-406(1) and (3), R.C.M. 1947 (Supp. 1971), assessed taxes on

1/12 of the total number of cattle against M-V Enterprises, the party in whose possession and under whose control the cattle were. The corporation, maintaining that it could not be taxed for cattle which it did not own, refused to pay. Neither the personal property taxes nor the real property taxes assessed for 1971 against M-V Enterprises were paid, and the county, in 1976, finally instituted proceedings for a tax deed. On February 18, 1976, plaintiffs, alleging that no statutory authority existed under which the county legally could assess against them taxes on cattle owned by other individuals, petitioned the District Court for an order enjoining the defendants from taking tax deed unless the total amount, $27,990.39, was paid by March 10, 1976.

Faunco, Inc. has joined as a party plaintiff, because it is the present owner of the real property subject of this action. In November, 1971, M-V Enterprises, by virtue of an unrecorded assignment from L. D. and Margaret Stensvad, owned the real property subject of these tax deed proceedings. At that time, a Roundup bank declared L. D. Stensvad and M-V Enterprises in default on certain obligations and foreclosed on the property. Roundup Cattle Feeders, a corporation uninvolved in this litigation and in which none of the parties hereto appears to have an interest, bought the property at a foreclosure sale. Subsequently, in June, 1975, Faunco, Inc., purchased the property from Roundup Cattle Feeders. Although apparently not a shareholder in Faunco, Inc., L. D. Stensvad is its general manager and its registered agent. Faunco, Inc., has tendered payment of the outstanding taxes owed on the real property, exclusive of the amounts levied for the cattle owned by the individual investors; the county twice rejected the offer of that

payment. Faunco requests that the county be ordered to make an assessment which does not include taxes on the cattle, so that the corporation may pay that amount and thereby clear its title of the tax lien.

On April 16, 1976, the Honorable Nat Allen presided over a hearing on the merits of the case. In its amended findings of fact, conclusions of law, and judgment, the court concluded that the taxes were lawfully assessed and denied plaintiffs any relief. Notice of appeal was timely filed and oral argument heard by this Court. Although the District Court properly decided that the county assessor correctly assessed the taxes due on the cattle to M-V Enterprises, in whose possession and control the cattle were at the time of assessment, we reverse that portion of the determination which, in effect, precludes Faunco from paying all taxes and penalties due, exclusive of those assessed against the cattle.

Plaintiffs allege that numerous errors are to be found in the court's findings and conclusions, but only one of those, whether the county assessor acted properly, in conformity with section 84-406, R.C.M. 1947 (Supp. 1971), in assessing the taxes due on the cattle to M-V Enterprises, merits consideration.

Section 84-406, R.C.M. 1947 (Supp. 1971), controlling at the time of the events complained of by plaintiffs, reads in pertinent part:

"(1) The assessor must, between the first Monday of March and the second Monday of July in each year, ascertain the names of all taxable inhabitants, and assess all property in his county subject to taxation, except such as is required to be assessed by the state board of equalization, and must assess such property to the persons by whom it was owned or claimed, or in whose posses-

sion or control it was at 12 midnight of the first Monday of March next preceding. . . The procedure provided by this section shall not apply to:

". . .

"(b) Livestock being fed in feeding pens or enclosures which may by subdivision (3) of this section be assessed on an average inventory basis. Credits must be assessed as provided in section 84-101, subdivision 6."

Subdivision (3) states how such livestock shall be assessed:

"(3) The assessed value of livestock being fed in feeding pens or enclosures on the first Monday in March may be computed by adding the value of livestock more than six (6) months of age being fed on the last day of each month since the last assessment date and dividing the sum by twelve (12)."

The statute is written in the disjunctive, mandating the assessor to assess all taxable property in his county either to the persons by whom it was owned or claimed or in whose possession or control it was as of midnight of the first Monday of March. It is clear that the assessor acted properly in assessing to M-V Enterprises, in whose possession and control the cattle were, taxes on the cattle.

Plaintiffs have sought an injunction pursuant to section 84-4505, R.C.M. 1947, now section 15-1-405 MCA. That statute states:

"No injunction must be granted by any court or judge to restrain the collection of any tax or any part thereof, nor to restrain the sale of any property for the nonpayment of taxes, except:

"1. Where the tax, or the part thereof sought to be enjoined, is illegal, or is not authorized by law. If the payment of a part of a tax is sought to be enjoined, the other part must be paid before an action can be commenced.

"2. Where the property is exempt from taxation."

-6-

Although they allege at various times that the tax assessment here is both illegal and not authorized by law, plaintiffs offer no legal arguments in support of that position. Obviously the tax is authorized by law. The statute, section 84-406, R.C.M. 1947 (Supp. 1971), speaks for itself.

We point out in passing that such statutes have long since passed constitutional muster. As a leading authority observed over fifty years ago:

> "Statutes sometimes provide that tangible personal property shall be assessed wherever in the state it may be, either to the owner himself or to the agent or other person having it in charge; and there is no doubt of the right to do this, whether the owner is resident in the state or not. [C]attle and sheep may be required by the statute to be assessed where they are kept or where they have been taken to graze or to be fed . . ."
> 3 T. Cooley, The Law of Taxation §1071 (4th ed. 1924).

It has been the general rule since the turn of the century that the legislature has the power to adopt a mode of assessment such that property may be assessed to the party in possession of it. The North Dakota Supreme Court declared:

> "Indeed, the necessity for speedy and certain methods of producing revenue for governmental support is so great that the legislatures of many states have declined to enter into an investigation of titles for the purpose of taxation, particularly in reference to property of a shifting nature, and have, accordingly, provided for assessments against the party having the possession and control upon some specified date. Such enactments have been repeatedly before the courts, and have been uniformly upheld. Indeed, we are cited to no case which has denied the right of a state to enforce this method of assessment."
> Minneapolis & Northern Elevator Co. v. Traill County (1900), 9 N.D. 213, ____, 82 N.W. 727, 728, and cases subsequently cited.

We, too, have been cited to no case which has denied the right of a state to enforce the method of assessment which our legislature has seen fit to adopt. We, too, are of the opinion that "'"possessory control of property is

sufficient to authorize its assessment to the possessor or keeper of it."'" Minneapolis & Northern Elevator Co. v. Traill County, 82 N.W. at 729. Furthermore, "[w]e are convinced that the legislature had the right to act upon evidence of ownership afforded by possession, and for the purposes of taxation to make the presumption arising therefrom conclusive, and to provide, therefore, for the assessment and taxation of [cattle] to the party in possession in the manner and form as provided by the act in question." 82 N.W. at 731.

Because the tax is both authorized and legal, injunction will not lie. The District Court properly refused to grant an injunction on that basis.

In passing, we note that in a previous year, M-V Enterprises gave the county assessor's office a list of the individuals who owned the cattle. The assessments in that year apparently were made to the individuals and not to M-V Enterprises. There is conflicting testimony as to whether that information was provided in 1971. The county officials claim that the corporation did not furnish the information, so the assessor, acting in a reasonable and legal manner, assessed the tax against M-V Enterprises, in whose possession and control the cattle were. The assessment was not made to the L. D. Stensvad Cattle Company, whose registered brand was worn by each of the cattle, even though it is prima facie evidence that the person or corporation, in whose name a brand is of record, is the owner of all animals bearing the brand in the position and on the species stated in the certificate of record. Section 46-606, R.C.M. 1947, now section 81-3-105 MCA. The assessor, of course, could not rely on the numerical brand, which was not registered.

No obligation is imposed on the assessor to track down the "true" owner of the cattle. The obligation of section 84-406, R.C.M. 1947 (Supp. 1971), to assess to the person in whose possession or control the property was, had been fulfilled.

Having cracked the shell, we turn now to the nut of the problem, determination of whether Faunco, Inc., is obliged to pay taxes assessed on the cattle. Certain statutes which are determinative of this issue, have been overlooked. Those statutes are sections 84-3807 and 84-3808(a), R.C.M. 1947, now respectively sections 15-16-401 and 15-16-402(1) MCA:

> "84-3807. Tax operates as judgment or lien. Every tax has the effect of a judgment against the person, and every lien created by this title has the force and effect of an execution duly levied against all personal property in the possession of the person assessed from and after the date the assessment is made. . ."

> "84-3808. Tax on personal property lien on realty --separate assessment. (a) Every tax due upon personal property is a prior lien upon any or all of such property, which lien shall have precedence over any other lien, claim or demand upon such property, and except as hereinafter provided, every tax upon personal property is also a lien upon the real property of the owner thereof, from and after 12 m. of the first Monday in March in each year."

Thus, the tax due on the personal property, the cattle, is a lien on that property, section 84-3807, R.C.M. 1947, and the tax upon that personal property is a lien upon the real property of the owner thereof, section 84-3808, R.C.M. 1947. Because the cattle have long since gone to that great roundup in the sky, the lien on the cattle per se has evaporated. It has not evaporated as against the real property of the owners of the cattle, however.

It does not appear of record that Faunco, Inc., was owner of any of the cattle. Therefore, a tax upon the

cattle would not operate as a lien on the real property of Faunco, and Faunco is not obligated to pay the personal property taxes assessed against the cattle.

Faunco's demand that the county accept payment of the taxes and penalties due, exclusive only of those assessed against the cattle, is appropriately made. The county may not look to Faunco, Inc., for payment of the taxes and penalties due on the cattle, but must seek payment, under the terms of the statute, from those who were owners of the cattle. To that extent the judgment is reversed and the county enjoined from taking tax deed to the real property owned now by Faunco, Inc., upon its payment of all moneys, exclusive of the taxes on the cattle, due the county.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

-10-